260 So.2d 69 (1972)
James A. EUGENE
v.
Dr. Karl L. DOUGLAS and St. Paul Fire & Marine Insurance Company.
No. 4846.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
Rehearing Denied April 18, 1972.
Writ Refused May 18, 1972.
*70 George T. Oubre, Norco, for plaintiff-appellee.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, H. Martin Hunley, Jr., New Orleans, for defendant appellee and defendant appellant.
Before REGAN, REDMANN and BOUTALL, JJ.
REDMANN, Judge.
Defendant insurer of a now-deceased dentist, Dr. Karl Douglas, appeals from a judgment on a jury verdict for $6,500 as damages for a broken jaw which plaintiff suffered during a tooth extraction by defendant's insured.
Dr. Douglas died while the suit was pending. The only evidence from him is in the form of answers to interrogatories, which were general in nature and of little value in deciding the issue, which is whether he failed to meet the standard of care of the profession in the community, and by that failure caused plaintiff's injury.
Defendant's principal complaint is that there is insufficient evidence to show malpractice. The judge's instructions to the jury are also complained of.
Plaintiff's molar broke while being extracted, and the dentist then used a "bartype instrument" (the dentist's assistant identified it as an elevator) prying or twisting to extract the root portion of the tooth.
"And at that time he broke the jaw. I advised him he had broken my jaw, because I felt it when it slipped this way. He said, `Oh, your jaw ain't broke. Set in the chair.' He continually tried to move the remainder of the tooth. It began to pain me when he began to try to remove the rest of the tooth. I got up out of the chair. I said, `No, Doc. You broke my jaw.' He said, `Sit down in the chair.'" The dentist then had an x-ray taken and sent plaintiff to Dr. Clay Hunley, an oral surgeon.
Plaintiff also described being sent by Dr. Douglas to Dr. Hunley, across town, on his own despite unchecked bleeding and weakness.
Dr. Hunley removed the root and performed a closed reduction of the jaw, wiring it to a stainless steel brace which kept his upper and lower teeth together. Plaintiff's mouth remained wired closed for two months.
Dr. Hunley testified that in his 11 years of practice he had never broken a jaw. Another expert, Dr. Langston Reed, testified that in some 10,000 extractions he had never broken a jaw. (And the defendant's insured, Dr. Douglas, in interrogatory answers stated he had never broken any other jaw in 38 years of practice.)
Dr. Hunley had "no opinion either way" on whether improper technique had been used in the extraction. However, he did say the x-ray he took showed nothing which would have contraindicated extraction. (Thus, while some issue was made *71 whether defendant's insured lacked standard care by failing to take a pre-extraction x-ray, that failure did not contribute to the injury anyway.)
The x-ray showed the fracture was at the site of the broken root, making it a reasonable conclusion (and really not disputed) that the attempted extraction did cause the fracture.
The expert testimony is that the fracturing of a jaw can occur using proper techniques, and that a fracture is more likely to occur using improper techniques.
Defendant complains that instructions to the jury improperly included the ordinary negligence test of the reasonably prudent man. We believe that while this instruction may have caused some confusion it was clarified by later explicit and proper statement of the plaintiff's burden of proof in a malpractice suit.
The evidence establishes that plaintiff's jaw was fractured by Dr. Douglas; that it is a rare occurrence that a jaw is broken while employing proper professional technique. And there was evidence from which it could reasonably be inferred that fractured jaws are most often caused by improper technique, and plaintiff's testimony, if believed, strongly supports the conclusion that immediately after he told Dr. Douglas he felt the jaw slip and it was broken, Dr. Douglas' continued effort to extract the remainder was improper technique (in the absence of x-rays to determine whether the jaw was fractured). From all of this, in our opinion, the jury could reasonably infer that the fracture resulting from Dr. Douglas' earlier technique was not one of those rare occurrences of proper technique causing a fracture, but one of the more frequent cases of improper technique causing a fracture.
Plaintiff did fairly establish a prima facie case, rebuttal of which Dr. Douglas' death may well have hampered. But we surely cannot on that ground reverse the judgment appealed from.
Nor can we reduce its quantum, as defendant alternatively asks. A not dissimilar injury merited $5,000 in Roberts v. City of Baton Rouge, 238 So.2d 203 (La.App. 1970), where plaintiff's right jaw was fractured in two places but his mouth remained wired closed only one month. If our jury was somewhat more generous, we cannot say they exceeded the bounds of their "much discretion" under C.C. art. 1934 subd. 3.
The judgment is affirmed.