294 So.2d 618 (1974)
Mrs. Emma GOODWIN, wife of and Joseph Goodwin
v.
AETNA CASUALTY & SURETY COMPANY and Dr. Morris H. Laufer.
No. 5793.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
Rehearing Denied June 7, 1974.
Herman M. Schroeder, Schroeder, Kuntz & Miranne, New Orleans, for Mrs. Emma Goodwin, wife of and Joseph Goodwin, plaintiffs-appellants.
Adams & Reese by Henry B. Alsobrook, Jr., New Orleans, for Aetna Cas. and Sur. Co. and Dr. Morris H. Laufer, defendants-appellees.
Before BOUTALL, J., and LEON and NOBILE, JJ. Pro Tem.
BOUTALL, Judge.
This is an appeal from a malpractice suit in which a jury found for the defendants-appellees, Aetna Casualty & Surety Company and Dr. Morris H. Laufer, and against plaintiffs-appellants Emma Goodwin, wife of and Joseph Goodwin, dismissing plaintiffs' suit.
On October 24, 1968, during a dental x-ray analysis, defendant, an oral surgeon, found impacted wisdom teeth on both sides of plaintiff, Mrs. Emma Goodwin's mouth. Plaintiff testified that she had experienced *619 no previous difficulty with the teeth, while defendant testified that although the teeth caused no pain under normal circumstances, plaintiff felt pain when he pressed upon them. Defendant recommended removal of the teeth stating that the teeth could cause considerable future difficulty. Plaintiff gave her consent to the removal of the teeth.
On November 5, 1968, plaintiff was admitted to Mercy Hospital in New Orleans and on November 6, 1968 defendant performed oral surgery for the removal of the wisdom teeth on both sides of plaintiff's mouth. Plaintiff was discharged the next morning.
Upon arriving home the right side of plaintiff's face began to return to normal, but the left side remained swollen. Mr. Goodwin called defendant every night complaining that his wife was suffering considerable pain. On Friday, November 18, 1968, Mr. Goodwin brought his wife in to see defendant. Defendant examined plaintiff's mouth and decided to take x-rays. The x-rays showed that plaintiff had suffered a fracture of her left jaw.
Defendant then recommended that Dr. Raymond E. Boudreaux, Sr., an oral surgeon, do the repair work on the fractured jaw. Plaintiffs consented and on November 21, 1968 Dr. Boudreaux performed an open reduction of the fracture. During the operation plaintiff's jaws were wired. Plaintiff was discharged on November 25, 1968. Her jaws were immobilized by the wiring for over six weeks and she remained on a liquid diet. After the wiring was removed, she went on a soft diet. Plaintiff now complains that since the wiring she can no longer open her mouth as wide as before and that she has a numbness over part of her lip.
According to plaintiff, Mr. Goodwin, although he advised defendant nightly over the telephone of plaintiff's condition and despite the fact that the left side of her face remained distended, Dr. Laufer did not once go to plaintiff's home. Mr. Goodwin further testified that finally on November 15, 1968, he demanded that something be done and Dr. Laufer consented to see plaintiff.
On the other hand, defendant testified that after he discharged plaintiff he spoke at length with Mr. Goodwin and explained to him very clearly that he wanted him to call the following morning and make an appointment for a subsequent visit. Defendant stated that he called plaintiff's home the night she was discharged to ask how Mrs. Goodwin was feeling. He was told that she was in pain and he realized that this was normal. He reiterated that Mrs. Goodwin should eat nothing that required chewing.
There is a conflict in testimony concerning why defendant did not see plaintiff until 12 days after the operation. Although Mr. Goodwin stated that defendant did not offer to come out to plaintiff's home or to have her brought in, defendant testified that he told Mr. Goodwin that he would be happy to come out upon request but that it would be much better to bring her into the office because he would be much better equipped to handle her. Defendant further testified that Mr. Goodwin assured him he would bring her in as soon as he could.
There is a factual dispute as to whether the jaw was fractured during the operation or whether it was fractured after plaintiff's discharge from the hospital. Plaintiff claims that she did nothing at home which could have caused a fracture, while defendant states that at the conclusion of the operation he examined plaintiff's mouth completely and thoroughly, which was routine, and saw no evidence of any fracture. When asked if he fractured the jaw during the operation he stated that he positively did not. He further stated that had he fractured the jaw it would have been very obvious. The hospital records showed that plaintiff suffered no abnormal pain before discharge.
Defendant testified that in order to remove the impacted wisdom teeth some *620 bony structure had to be removed which rendered the jaw somewhat weaker, and that the pull of the maxillary muscle in this area could have been instrumental in a subsequent jaw fracture. He said that under this weakened condition a fracture of this type may occur following a simple yawn. Dr. Clay C. Hunley, an oral surgeon, testified that it is not customary for an oral surgeon to take an x-ray after he does the type of surgery that defendant performed on plaintiff. He stated further that in treating plaintiff defendant did conform to the standard of practise in the New Orleans community for oral surgeons. We are of the opinion that since neither defendant nor his staff saw any evidence of a fracture there was no malpractice due to the fact that no x-rays were taken immediately after the operation.
We also feel that the jury was in a better position to weigh Mr. Goodwin's testimony against defendant's testimony concerning why his wife was not examined until 12 days after the operation. They obviously sided with defendant's version of the facts.
A fair appraisal of the evidence presented in this case shows that there is a conflict as to pertinent facts upon which the verdict was based. It is the peculiar province of a jury to pass upon the credibility of witnesses and in such a case the verdict of the jury will not be disturbed unless manifestly erroneous. Selser v. Revol, 152 La. 447, 93 So. 675 (1922); Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3rd Cir. 1971); Reeder v. Allstate Ins. Co., 235 So.2d 111 (La.App. 4th Cir. 1970), writ refused, 256 La. 615, 237 So.2d 397.
According to the expert testimony it is not uncommon for a fracture of this nature to result from this type of operation. The plaintiff realizes this and contends that under the "informed consent doctrine" the defendant should have warned plaintiff of the possible consequences (such as a fractured jaw) of the operation. Plaintiff feels that since this was not an emergency situation she should have been informed that there was a slight possibility that she may come out of this type of operation suffering a fracture of the jaw. Plaintiff feels that with the benefit of this advice she would have been in a better position to make an intelligent decision as to whether or not to undergo the operation.
Because there is very little Louisiana jurisprudence on the subject of informed consent, plaintiff cites many decisions from other jurisdictions which state that the physician has a duty to warn of dangers lurking in proposed treatment and to impart information which the patient has a right to expect. We agree that a physician does have a duty to disclose material facts reasonably necessary to allow the patient to form the basis of an intelligent consent.
In Zachary v. St. Paul Fire & Marine Ins. Co., La.App., 249 So.2d 273 (La. App. 1st Cir., 1971) the court stated that because there was no showing that the patient's consent would have been withheld to surgery had patient been informed that vascular injury might result, the surgeon's failure to disclose this possible danger did not evidence negligence on his part. Also, in Shetter v. Rochelle, 2 Ariz.App. 358, 409 P.2d 74 (1965), we find the court stating that the plaintiff must show that, but for the absence of a disclosure, he would not have had the operation or allowed the procedure. In the present situation plaintiff has not submitted the necessary proof to show that had defendant informed her that there was an outside possibility that the surgery could result in a fractured jaw, she would not have undergone the operation. In the absence of this proof we are unable to hold defendant guilty of malpractice.
For the above reasons, the judgment of the trial court is affirmed, with plaintiff to pay all costs of this appeal.
Affirmed.