359 So.2d 1089 (1978)
Mrs. Levy HANKS, Plaintiff-Appellant,
v.
DRS. RANSON, SWAN & BURCH, LTD., et al., Defendants-Appellees.
No. 6502.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Writ Refused July 3, 1978.
*1090 J. Minos Simon, Lafayette, for plaintiff-appellant.
Pugh & Boudreaux, Charles J. Boudreaux, Lafayette, for defendants-appellees.
Before GUIDRY, FORET and CUTRER, JJ.
CUTRER, Judge.
This is a suit for damages by Mrs. Levy Hanks based upon the alleged negligence of Dr. U. J. Arretteig, a pathologist, and Dr. Arthur Vidrine, a surgeon, arising out of a surgical procedure wherein a mastectomy (removal of the left breast) was performed by Dr. Vidrine upon Mrs. Hanks. Joined as defendants were a medical corporation (Drs. Ranson, Swan & Burch, Ltd.), Lafayette Medical Laboratories, Inc., Dr. Arretteig, Dr. Vidrine and their insurers. Prior to trial on the merits, a compromise settlement was entered into by Mrs. Hanks with Dr. Arretteig and all the other defendants except Dr. Vidrine and his insurer, St. Paul Fire & Marine Insurance Company. The case was tried against Dr. Vidrine and his insurer before a jury which rendered a verdict in favor of defendants. From an adverse judgment, the plaintiff appealed, alleging that the trial judge failed to properly instruct the jury. We affirm.
Dr. Vidrine, a qualified surgeon of Lafayette, Louisiana, had examined Mrs. Hanks during the year of 1973 and had found a *1091 lump in her left breast. In January 1974 he found that the lump had become enlarged. Dr. Vidrine recommended surgical exploration to determine whether the growth was cancerous or benign. Dr. Vidrine informed Mrs. Hanks that she had a lesion in her breast which he felt should be removed. He further informed her that he would place her in the hospital and put her under general anesthetic for the purpose of performing the removal of the lesion. He further stated to Mrs. Hanks that the lesion would be removed and examined by a pathologist. If the pathologist diagnosed cancer, the breast would then be removed. If the pathologist concluded otherwise, the incision would be closed and she would be able to return home the following day.
Mrs. Hanks submitted to surgery on February 7, 1974. Dr. Vidrine placed Mrs. Hanks under general anesthetic and removed a portion of the lesion. He sent the removed tissue to Dr. Ulysses J. Arretteig, a qualified pathologist, for the purpose of performing a quick-freeze examination and diagnosis. Dr. Arretteig performed an examination of the sample and determined that it was cancerous. He informed Dr. Vidrine of the cancerous condition while Mrs. Hanks was still under anesthetic. The surgeon thereupon proceeded to remove Mrs. Hanks' left breast. The following day Dr. Arretteig prepared a permanent section of the tissue, examined same and discovered that his first diagnosis was in error. On the second examination Dr. Arretteig diagnosed a benign condition known as sclerosing adenosis. The error in diagnosis was made known to Dr. Vidrine by the pathologist on the day after the operation, which was too late to save the breast.
The details of the diagnostic procedure are important to this opinion. They were explained by the pathologist, Dr. Ulysses Arretteig, who said that during the operation Dr. Vidrine removed tissue from the affected organ and requested a minimum frozen section examination. This pathologist examined the tissue with the naked eye and selected the portion that he wanted to examine closer by microscope. The tissue was then placed in a "microtome", which is a freezing chamber that freezes the tissue down to 20 degrees below zero. The purpose of the freezing is to make the tissue firm enough to make very thin slices. This microtome contains a surgical-type knife which cuts the tissues to a thickness of 8 to 10 microns.[1] This is an extremely thin slice, thin enough that the pathologist can stain it, pass light through it, and observe the tissue by microscope. After he examined same by microscope, he concluded that a cancerous condition existed. This was communicated to Dr. Vidrine who then performed the radical mastectomy on Mrs. Hanks. Dr. Arretteig further explained that in all cases it is necessary that the pathologist keep a permanent slide of the tissue that he examines. This cannot be done with a frozen section as it cannot be kept frozen permanently. A permanent section is therefore taken which involves a process wherein the tissues are imbedded in paraffin and thin slices are removed from same. In order to effectuate a permanent section it is necessary to treat the tissues chemically, and this takes approximately 18 to 24 hours. After a permanent paraffin section is made, the pathologist examines the slide to make certain it is of good readable quality. Dr. Arretteig made the permanent slide and upon examination of same discovered his erroneous diagnosis of the frozen section.
Mrs. Hanks alleged that Dr. Arthur Vidrine, Jr., the surgeon, knew or should have known that the frozen section examination was not accurate or reliable as a procedure for determining whether tissue was cancerous or benign. She further alleged that Dr. Vidrine was negligent in performing the mastectomy without getting a second reading by the pathologist from a permanent section.
Mrs. Hanks further alleged that Dr. Vidrine failed to comply with the informed consent law of this state by not informing her that the two procedures were available, *1092 that is, the frozen section and the permanent section, which would have given her the option of determining whether she wanted to get the benefit of both procedures and examinations before any operation was performed. She alleges that by virtue of the lack of informed consent Dr. Vidrine is liable.
The principal issue involved on this appeal is whether the trial judge properly instructed the jury on the legal principles involving informed consent.
The charge given by the trial court reads as follows:
"Louisiana law recognizes the informed consent doctrine. Not only must a patient consent to an operation but such consent must be an informed consent. A physician has a duty to disclose material facts reasonably necessary to allow the patient to form the basis of an intelligent consent. It is not incumbent upon an attending physician to advise a patient as to every conceivable possibility and eventuality that may stem from that physician's treatment. If the possibility is one that can reasonably be anticipated and falls within the expertise of the treating physician, then the treating physician should so inform his patient. Consent is not properly given if the operation involves risks and results not contemplated or explained to the patient. A physician's breach to disclose a possible danger is not a breach of duty on his part in the absence of a showing that the patient's consent would have been withheld if the patient would have been informed of the danger.
"A physician is not required to inform his patient of a remote or rare possibility, or an event which cannot be reasonably anticipated. In determining whether or not a possibility is remote or rare or whether the result can be reasonably anticipated you must consider the testimony of medical experts who are familiar with the standard of care in the community."
The above charge is an adequate correct statement of the law of Louisiana on informed consent, which law can be found in the cases of Parker v. St. Paul Fire and Marine Insurance Company, 335 So.2d 725 (La.App. 2nd Cir. 1976),[2] writ refused 338 So.2d 700 (1976), and DeLaune v. Davis, 316 So.2d 7 (La.App. 1st Cir. 1975).[3] The plaintiff alleges that the last paragraph of the above instruction required the jury to decide that the physician's duty to disclose a material risk to the patient was governed *1093 by the standard of practice of other physicians in the same community rather than as a duty imposed by law. This position is without merit simply because a reading of the instruction reflects that the jury was to consider testimony of medical experts familiar with the standard of care in the community to determine whether the risk was remote, rare, or could be reasonably anticipated.
In support of her position, the appellant cites the case of Percle v. St. Paul Fire & Marine Ins. Co., 349 So.2d 1289 (La.App. 1st Cir. 1977) which adopted the view that the physician is under a duty to disclose all known risk material to the patient's decision, and, given the risk, the trier of fact is competent to decide, without the aid of experts, whether the risks were material and should have been disclosed. This decision seems to state that the testimony of the experts should not be considered in determining whether the duty to disclose has been properly performed. We conclude, however, that expert testimony is essential in complex medical problems in order for the jury to decide whether the risk is rare, remote, or could reasonably be anticipated by the physician. To this extent, we disagree with the conclusion reached in Percle.
The case at hand involves such a complex medical problem. The physicians testifying in this case[4] all stated, as a matter of fact, that this is the first time that a situation has developed wherein a pathologist diagnosed the frozen tissue as being cancerous and on second reading of the permanent section found that he had made an erroneous diagnosis, thereby causing the surgeon to perform an unnecessary mastectomy. This testimony gave the jury an opportunity to determine for themselves whether this was a risk that could be classified as rare, remote or one that could reasonably be anticipated by the physician. This testimony was relevant for a jury determination of whether the two types of sections and procedures should have been disclosed to the patient.
We find the surgeon did not breach his duty of disclosing information necessary in order for the patient to intelligently exercise her judgment. The risk in this case was so rare or remote that it could not have been reasonably anticipated by Dr. Vidrine.
Appellant further contends that the court failed to give the "Favalora" charge. In Favalora v. Aetna Casualty & Surety Company, 144 So.2d 544 (La.App. 1st Cir. 1963), it was held that a physician can still be found negligent, even if he meets the standard of care in the local community, where the community standard is unreasonable. The "Favalora "charge was contained in the instructions and is found on Pages 338 and 342 of the transcript.[5]
The appellant further contends that the trial court erred in invoking a double burden of proof on the plaintiff when the jury was charged that the plaintiff had to prove that the defendant did not exercise the degree of care in the community and that defendant was guilty of negligence. Plaintiff contends that the proof of one or the other is sufficient. We find no merit to this argument since the jury instructions later clarified this statement with a proper and explicit statement of the law. Eugene v. Douglas, 260 So.2d 69 (La.App. 4th Cir. *1094 1972), writ refused, 261 La. 1044, 262 So.2d 35 (1972).
We have reviewed the instructions submitted to the jury by the trial court in light of the allegations and the issues presented in the trial of this case. It is concluded that Mrs. Hanks was accorded a meaningful jury trial. A meaningful jury trial includes proper instructions by the court. Adequate instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Bienvenue v. Angelle, 254 La. 182, 223 So.2d 140 (1969). The instructions given by the trial judge adequately accomplished the foregoing purpose and enabled the jury to reach a verdict which is fully supported by the evidence and the law.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] 8 microns = .00031496 inches.
[2] "Louisiana law recognizes the informed consent doctrine. Not only must a patient consent to an operation but such consent must be an informed consent. A physician has a duty to disclose material facts reasonably necessary to allow the patient to form the basis of an intelligent consent. Goodwin v. Aetna Casualty & Surety Company, 294 So.2d 618 (La.App. 4th Cir. 1974). It is not incumbent upon an attending physician to advise a patient as to every conceivable possibility and eventuality that may stem from that physician's treatment. If the possibility is one that can reasonably be anticipated and falls within the expertise of the treating physician, then the treating physician should so inform his patient. DeLaune v. Davis, 316 So.2d 7 (La.App. 1st Cir. 1975). Consent is not properly given if the operation involves risks and results not contemplated or explained to the patient. Rogers v. Lumbermens Mutual Casualty Company, 119 So.2d 649 (La.App. 2nd Cir. 1960). A physician's failure to disclose a possible danger is not a breach of duty on his part in the absence of a showing that the patient's consent would have been withheld if the patient had been informed of the danger. Goodwin v. Aetna Casualty & Surety Company, supra; Zachary v. St. Paul Fire & Marine Ins. Co., 249 So.2d 273 (La.App. 1st Cir. 1971)."
[3] "Plaintiff contends that under the `informed consent doctrine' as expressed in Goodwin v. Aetna Casualty & Surety Co., 294 So.2d 618 (4th La.App., 1974), it was incumbent upon Dr. Acree to advise the decedent of such a possibility. We agree with the `informed consent doctrine' and concede that the same may by analogy be applied in the instant case if the facts so warranted. However, we do not believe that it is incumbent upon an attending physician to advise a patient as to every conceivable possibility and eventuality that may stem from that physician's treatment. If the possibility is one that can be reasonably anticipated and falls within the expertise of the treating physician, then the treating physician should so inform his patient. However, relating the facts in the instant case to the application of this theory, we find the possibility of a traumatic aortic aneurysm to be so remote as to be beyond the realm of reasonable probability."
[4] Dr. Arretteig, pathologist Dr. Swan, pathologist Dr. Brierre, pathologist Dr. Vidrine, surgeon Dr. LaBorde, surgeon Dr. Smith, surgeon.
[5] (p. 338) "A member of the medical profession is not relieved from liability for injury to a patient on the ground that he followed a degree or standard of care practiced by others in the same locality when the degree or standard of care in question is shown to constitute negligence because it fails to meet the test of reasonable care and diligence required of the medical profession."

(p. 342) "Even though you may find that a physician or surgeon possesses that degree of reasonable and ordinary care, diligence and skill in the diagnosis and treatment of his patient as that ordinarily possessed and exercised by physicians similarly engaged in the same or similar locality, such a physician or surgeon is nonetheless guilty of actionable negligence if, in the diagnosis or treatment of his patient, he fails to exercise due care in the diagnosis and treatment of his patient."