458 So.2d 647 (1984)
Michael Kevin WEST and His Wife, Connie West, Plaintiffs-Appellants,
v.
STATE BOAT CORPORATION and National Fleet Corporation, Defendants-Appellees.
No. 83-994.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
*648 McClain, Morgan & Savoy, Robert E. Morgan, Lake Charles, for plaintiffs-appellants.
Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, Brian G. Meissner, New Orleans, for defendants-appellees.
Before GUIDRY, STOKER and YELVERTON, JJ.
STOKER, Judge.
This is an appeal of a case under the Jones Act and Maritime Laws of the United States. This action was brought by Michael Kevin West against State Boat Corporation and National Fleet Corporation for personal injuries suffered while he was employed as an able-bodied seaman on the motor vessel STATE VENTURE, and by Connie West, his wife, for loss of consortium as a result of her husband's injuries.

FACTS
The STATE VENTURE was an offshore supply vessel owned and operated by State Boat Corporation. Shortly after midnight on March 22, 1981, the STATE VENTURE was engaged in pumping barite to an oil rig in the Gulf of Mexico. The vessel was anchored from its bow, and its stern was tied to the rig with two nylon lines. The anchor gave way and the vessel swung around to the port (left) and collided with the leg of the rig. The captain ordered that the stern lines be untied. The port line was untied, but the starboard line was pulled taut and could not be untied. The captain then ordered that the starboard line be cut. Mr. West cut the line with a fire ax. The line snapped back striking him on the leg and injuring him.
The claims against National Fleet Corporation were dismissed at trial. The jury returned a verdict that there was no negligence on the part of State Boat Corporation and that the STATE VENTURE was not unseaworthy. Judgment was entered in accordance with the verdict, and the Wests now appeal. See 443 So.2d 1171.

ISSUES
The Wests raise several issues in their brief which can be summarized as follows:
1) Was the captain of the STATE VENTURE negligent under the Jones Act?
2) Was the STATE VENTURE unseaworthy?
3) Did the trial judge err in giving repetitious jury instructions concerning the burden of proof?

SCOPE OF REVIEW
Before beginning our analysis, we note our limited role in reviewing the jury verdict. Although this court is constitutionally authorized to review both the law and the facts in civil cases, under federal law and jurisprudence, which we must apply in cases involving federal statutes and federal maritime law, the jury's finding of facts cannot be disturbed by an appellate court unless there is no reasonable evidentiary basis for the jury's conclusions. Ellender v. Texaco, 425 So.2d 291 (La.App. 3d Cir.1982).

NEGLIGENCE OF THE CAPTAIN
The Wests first argue that the captain of the STATE VENTURE was negligent under the Jones Act in having nonoperating personnel on duty in the wheelhouse. Questions of negligence are factual questions for the jury. We do not find that the jury was without reasonable evidentiary *649 basis for its conclusions. While the vessel was anchored and tied to the rig, Capt. Oldmixon lay down on the settee in the wheelhouse leaving deckhand Ed Wallach and engineer Frank Hill on watch on the bridge deck. Since the vessel was not being navigated, the 46 U.S.C.A. § 404-1(8) requirement that there be a licensed deck officer would not apply. We do not believe the jury was clearly wrong in finding no negligence resulting from the captain of the vessel leaving the deck and lying down in the wheelhouse while the vessel was anchored and tied up.
The Wests next argue that the captain was negligent in failing to bring the vessel under proper control. There was conflicting expert testimony as to what Capt. Oldmixon should have done under the circumstances. J.B. Kleinpeter, a witness for the plaintiff, was qualified as an expert in operation of vessels and testified that Capt. Oldmixon could have maneuvered the vessel to avoid hitting the leg of the rig. To do this he would have had to put his port engine in forward, his starboard engine in reverse, and used the bow thruster to thrust the bow to starboard. Even after the vessel hit the rig, Capt. Kleinpeter suggested he could have avoided cutting the starboard line by bringing the vessel parallel with the legs of the rig and then backing up. The starboard line would then be slack and could have been untied.
Guy Nielson, a witness for the defense, was qualified as an expert in marine navigation and boat handling. He disagreed with Capt. Kleinpeter as to what Capt. Oldmixon should have done once he collided with the rig. He believed Capt. Oldmixon took appropriate action and that the action Capt. Kleinpeter suggested was the worst thing he could have done. Had he maneuvered the vessel around the rig leg, he could have damaged the rig legs, or the superstructure of the rig, or caused more damage to his vessel.
Since there was a conflict in the experts' opinions as to what actions Capt. Oldmixon should have taken, we cannot say the jury was clearly wrong in finding no negligence.
The Wests' final argument on negligence is that the captain of the STATE VENTURE was negligent in failing to anticipate changes in weather conditions entirely normal to the Gulf of Mexico, which require the taking of certain precautions. At the time of the accident seas were six to eight feet in height and winds were forty knots (approximately 46 m.p.h.). There was some testimony that these conditions may have been caused by a waterspout. Just before the incident the weather was calm, with seas of no more than one to two feet. It was not raining at that time, but it was raining at the time West chopped the line and was injured. The plaintiffs' expert witness, Capt. Kleinpeter, testified that forty-knot winds are rather uncommon in the Gulf of Mexico. Considering that the weather conditions arose suddenly and that they were uncommon conditions, we believe there was significant evidence to support the jury's finding of no negligence.

UNSEAWORTHINESS
The plaintiffs contend the STATE VENTURE was unseaworthy in having a bent anchor. There was testimony by the captain that the anchor was not bent before the incident. Michael West testified that it was bent and that the captain knew it was bent. Since the jury heard testimony that the anchor was not bent, there was an evidentiary basis for its evident conclusion that it was not bent. Therefore, we cannot conclude that the anchor was bent, making the vessel unseaworthy.
Plaintiffs then argue that the vessel was unseaworthy in having unqualified personnel on duty in the wheelhouse, who were not licensed to, nor experienced in operating the vessel. Although the vessel would have been unseaworthy if it had been in navigation with only unlicensed, unqualified personnel on duty in the wheelhouse, these were not the facts of this case. This vessel was tied to the rig and anchored. Qualified personnel were on board, and the vessel was stationary. The captain was lying down in the wheelhouse. *650 He took immediate action when the emergency arose. We cannot say the jury was clearly wrong in finding the vessel was not unseaworthy.
The Wests next argue that the STATE VENTURE was unseaworthy in the method of anchoring and tying same. Plaintiff Michael West testified that he saw no problem with the way the vessel was tied up. The plaintiffs' expert witness, Capt. Kleinpeter, testified that there was sufficient length of anchor chain. The jury had sufficient evidence before it to find the manner of anchoring and tying of the vessel did not make it unseaworthy. In addition, the plaintiffs' brief does not clearly set forth specifically what was wrong with the way the vessel was tied and anchored.
The final basis for the Wests' argument that the vessel was unseaworthy is that the type of bitt employed for tying the rig line to the stern vessel was so constructed that the line would pinch and could not be removed when the line was pulled taut. State Boat Corporation argues that the evidence was insufficient to prove unseaworthiness because of bitt design. We believe there was insufficient evidence in this regard for us to hold the jury was clearly wrong in finding the vessel was seaworthy. The plaintiffs did not put on any evidence as to how a different bitt design would prevent the rope from pinching so that it could be untied when under tension.

JURY INSTRUCTIONS
The final issue raised by the Wests is whether the trial judge erred in giving instructions containing multiple and unnecessary repetitions to the effect that the plaintiff had the burden of proof. We find that any repetitions were not prejudicial and did not constitute reversible error. The jury instructions were not misleading. They correctly stated the law to be applied. Adequate jury instructions are those instructions which fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Hanks v. Drs. Ranson, Swan and Burch, Ltd., 359 So.2d 1089 (La.App. 3d Cir.1978), writ denied, 360 So.2d 1178 (La.1978). Each jury instruction on the burden of proof applied to a different issue. The first instruction on the burden of proof applied to proving negligence, the second to proving every element of the Jones Act, and the third to proving unseaworthiness. The trial judge correctly and fairly pointed out the issues. He did not mislead the jury. The trial judge did not err in giving the instructions.

CONCLUSION
We find no reversible error. The judgment of the trial court is affirmed. The costs of the appeal are assessed to plaintiffs-appellant.
AFFIRMED.