563 So.2d 1297 (1990)
Albert HANKS, et ux, Plaintiffs-Appellants,
v.
BARGE TRANSPORT COMPANY, INC., et al, Defendants-Appellees.
No. 89-213.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1990.
Rehearing Denied August 8, 1990.
*1299 Jones, Jons & Alexander, J.B. Jones, Jr., Cameron, for plaintiffs-appellants.
Emmett, Cobb, Waits & Kessenich, P.C., James A. Cobb, Jr. and Barry M. Barnett, New Orleans, for defendants-appellees.
Before FORET, STOKER and YELVERTON, JJ.
FORET, Judge.
This is a personal injury action filed by Albert and Louisa Hanks against Barge Transport Company, Inc. (Barge Transport), Citgo Petroleum Corporation, Cities Service Company, and Cities Service Oil & Gas Corporation[1]. The trial court rendered judgment in favor of defendant, Barge Transport, dismissing all of plaintiffs' demands, and plaintiffs have filed this appeal.

FACTS
At the time of the accident in question, Albert Hanks had worked eight and one-half years as a tankerman for Barge Transport[2]. Before going to work for Barge Transport, Hanks had been working as a tankerman for approximately seventeen years. Among other things, a tankerman is charged with the responsibility of seeing to it that a vessel is safely and securely moored, that all fuel connections during cargo transfer are properly made, and that the cargo transfer is properly supervised at all times.
On March 19, 1987, Albert Hanks was a crew member aboard the tug boat Black Bay. On that date, at approximately 11:10 P.M., the Black Bay docked at the Citgo dock in Lake Charles with its tow of two flat deck barges, the D/B Commanche and D/B Apache, both of which contained crude oil. After the tug and barges were tied off, Albert Hanks, who was the tankerman on duty, met with Citgo employees to sign the necessary paperwork, including a declaration of inspection. The purpose of the declaration of inspection is, in general, to assure that the cargo transfer is properly and safely conducted.
Once the declaration of inspection was completed and the Citgo pipefitters had finished hooking up the necessary hoses, Hanks began his normal procedure of opening the approximately seventeen valves which are equipped with wheel-type handles in order to begin the cargo transfer. According to Hanks, one or two of the valves were stuck, requiring extra effort to open them. It is Hanks' contention that he injured his neck and back area while opening these stuck valves. Nevertheless, Hanks finished opening all the valves and remained on duty for the final seven days of his fourteen-day shift. However, he has not returned to work since that time.
Dr. William Foster performed a posterior cervical decompression laminectomy on seaman Hanks, and it is Dr. Foster's opinion that he is 100% disabled.
On appeal, plaintiffs make the following assignments of error:
(1) The jury verdict form asks only if the M/V Black Bay was unseaworthy and fails to inquire about the seaworthiness of the D/B Commanche or D/B Apache.
(2) The jury committed manifest error in failing to find that the barges in question were unseaworthy.
(3) The jury committed manifest error in failing to find negligence on behalf of Barge Transport.
(4) The trial judge made a serious evidentiary error which was a major contributing factor in bringing about the verdict in favor of Barge Transport.

*1300 STANDARD OF REVIEW
In Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986), the U.S. Supreme Court stated that "state courts are not required to apply Rule 52(a)a rule of federal civil procedureto their own appellate system for reviewing factual determinations of trial courts." See also Daigle v. Coastal Marine, Inc., 488 So.2d 679 (La.1986). We therefore find that our manifest error standard of review of fact is applicable. Considering this, we acknowledge that our decision in West v. State Boat Corp., 458 So.2d 647 (La.App. 3 Cir.1984), has been overruled by the above cited cases to the extent that it holds that we must employ a federal standard of review to cases arising under the Jones Act and federal maritime law.

ASSIGNMENT OF ERROR NO. 1
In their first assignment of error, plaintiffs complain that the verdict form was fatally defective in that it inquires only about the unseaworthiness of the M/V Black Bay and does not inquire about the seaworthiness of the D/B Apache and D/B Commanche. In view of the fact that the weight of evidence adduced at trial was directed to the condition of the barges, as opposed to the tug itself, it is indeed logical to assume that the jury must have understood that the tug and barges were to be considered as one in determining whether or not an unseaworthy condition existed. This is particularly true in view of the fact that the barges in question were part of the Black Bay's tow at the time the accident took place.
Secondly, and perhaps most significantly, we have reviewed the record in these proceedings and find no objection by plaintiffs to the verdict form, and it is clear that plaintiffs had the opportunity to do so (see Transcript pages 569-573). It is well established that the failure to timely object at trial to a jury interrogatory constitutes a waiver of any objection thereto on appeal. Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3 Cir.1984), writ denied, 465 So.2d 737 (La.1985), reconsideration denied, 467 So.2d 1125 (La.1985). We therefore find plaintiffs' first assignment of error to be without merit.

ASSIGNMENTS OF ERROR NOS. 2 and 3
Plaintiffs argue that the trial court erred in failing to find that the vessel and/or barges in question were unseaworthy. Plaintiffs further maintain that the trial court erred in finding that Barge Transport was not guilty of negligence under the Jones Act. Among the conditions which render a vessel unseaworthy, thus imposing liability on the vessel owner for injuries occasioned thereby, are defective gear, appurtenances in disrepair, unfit crew, insufficient number of men assigned to perform shipboard tasks, and improper loading or storage of cargo. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971).
With regard to the issue of negligence, while plaintiffs contend that a "featherweight" burden of proof is applicable to seamen in Jones Act cases, it is nevertheless clear from the jurisprudence that plaintiff must nonetheless establish the essential elements of a negligence action in order to recover under the Jones Act, i.e., the existence of a duty, violation of that duty, and causal relationship between the violation and the injury. Gilmore and Black, 2nd Ed., The Law of Admiralty, § 6-36.
Turning now to the facts of the instant case, we find that the jury could have reasonably concluded, based upon the evidence and its evaluation of the witnesses' credibility, that the valves in question were not stuck or defective and that plaintiff simply injured himself while exerting an ordinary amount of force in order to open the valves. Surely, we cannot say, based upon the evidence of record, that such a finding by the jury is clearly wrong *1301 or that it is wholly unsupported by the evidence. While plaintiff did offer several possibilities as to how or why the valves can become stuck[3], plaintiff failed to prove, by a preponderance of the evidence, that any such circumstance did, in fact, occur. It was established at trial that these valves are sometimes hard to open even when they are in proper working condition and this is surely something plaintiff must have been aware of as a tankerman with twenty-five years of experience. Considering this, we find that the jury did not commit manifest error in finding that the barges in question were not unseaworthy.
With regard to the issue of negligence, it was established at trial that plaintiff, as the tankerman on duty, was charged with the responsibility of seeing to it that the transfer of cargo, such as crude oil, is safely conducted and properly manned. Plaintiff himself stated that he was fully aware of his responsibilities in this regard. Nevertheless, plaintiff chose to undertake this operation by himself and in fact managed to complete the entire process of opening all seventeen valves within a period of approximately ten minutes. Based upon this evidence, as well as the fact that there was available to plaintiff a valve wrench which is specifically designed to assist the tankerman in opening stuck valves, the jury could have reasonably concluded that plaintiff was 100% at fault in causing his injuries. We therefore find plaintiffs' second and third assignments of error to be without merit.[4]

ASSIGNMENT OF ERROR NO. 4
In their final assignment of error, plaintiffs contend that the trial court erred in allowing into evidence a copy of a letter from Captain J.J. Wicks, United States Coast Guard, advising Barge Transport that if certain conditions were met, Barge Transport would be allowed to have only one person present to supervise simultaneous cargo transfers involving more than one vessel. Assuming, arguendo, that the trial court did err in admitting the letter in question into evidence, we fail to see how the admission of this letter was prejudicial to plaintiffs' case in view of the fact that the letter simply states the conditions which must be met in order to allow for a one-man cargo transfer and does not state that such conditions were, in fact, satisfied. Had the letter stated that all conditions were met and that Barge Transport was therefore authorized to use one man for cargo transfers, our decision as to the prejudicial effect of the letter may be different. However, the letter clearly does not state this and, given its content, we find the introduction of the letter from Captain Wicks to be harmless error.
Furthermore, considering the overwhelming evidence of record supporting a finding by the jury that the valves in question were not stuck or defective in any way, as well as the substantial evidence of record establishing that seaman Hanks, as tankerman in charge, was fully responsible for the cargo transfer procedure and had available tools which would assist in the opening of the valves, we find that the introduction into evidence of the letter in question, even if improper, is not reversible error. We therefore find plaintiffs' fourth assignment of error to be without merit.
*1302 The judgment of the trial court is affirmed and all costs of this appeal are assessed to plaintiffs-appellants, Albert and Louisa Hanks.
AFFIRMED.
NOTES
[1] Prior to trial, Citgo Petroleum Corporation, Cities Service Company, and Cities Service Oil & Gas Corporation were dismissed from this lawsuit.
[2] This case arises under the Jones Act (46 U.S.C. 688) and general maritime law. It was stipulated at trial that at all times pertinent hereto Albert Hanks was a seaman.
[3] Our use of the word "stuck" does not mean that the valves were unopenable; it simply means that they were harder to open than some of the other valves. Plaintiff had available to him a valve wrench to facilitate opening hard-to-open-valves. Plaintiff did not choose to avail himself of the wrench.
[4] Plaintiffs also allege the violation of four Coast Guard regulations. We have reviewed these regulations and only one (33 CFR 156.115) is a manning statute. This section provides that at least two persons must be in charge of "oil transfer operations on more than one vessel at a time during oil transfers between vessels or between two or more vessels and a facility unless authorized by the COTP." Our review of the record indicates that the violation of this statute was not established at trial, particularly in light of the testimony of Captain George A. Blann, defendant's expert, as well as that of crew member Elton Jeansonne. As for the remaining three Coast Guard regulations cited by plaintiffs, we see no causal connection between the alleged violation of these regulations and the injuries sustained by seaman Hanks.