# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-0042


RYAN GEORGE

VERSUS

HORACE MCBRIDE, ET AL.


************

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-C-2216-A
HONORABLE JAMES P. DOHERTY, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**


**Joseph F. Gaar, Jr.**
**Jason M. Welborn**
**Willard P. Schieffler**
**Post Office Box 2053**
**Lafayette, LA 70502-2053**
**(337) 233-3185**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**      Ryan George**

**F. Douglas Gatz, Jr.**
**Ralph E. Kraft**
**Bryan E. Lege**
**Kraft, Gatz, Lane, Benjamin, L.L.C.**
**600 Jefferson Street, Suite 410**
**Lafayette, LA 70501**
**(337) 706-1818**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Horace McBride**
    **Helix Energy Solutions Group, Inc.**
    **Ace American Insurance Company**

PETERS, J.

The plaintiff, Ryan George, appeals a jury verdict rejecting his claim for damages he sustained in a two-vehicle accident in Lafayette, Louisiana, on February 19, 2007. For the following reasons, we affirm the jury verdict in all respects.

## DISCUSSION OF THE RECORD

The accident at issue in this litigation occurred at the intersection of Simcoe Street and Evangeline Thruway in Lafayette, Louisiana, when a vehicle driven by Horace McBride struck the rear of a vehicle driven by Richard Benoit, Jr., as Mr. Benoit attempted a left turn. At the time of the accident, Mr. McBride was in the course and scope of his employment with Helix Energy Solutions Group, Inc., and was driving a vehicle owned by his employer and insured for liability purposes by Ace American Insurance Company. Mr. George occupied Mr. Benoit's vehicle as a guest passenger at the time of the accident, and sustained significant personal injuries requiring extensive medical treatment.

After settling any claims he may have had against Mr. Benoit, Mr. George instituted a suit for damages against Mr. McBride, his employer, and the liability insurer (hereinafter referred to collectively as "the defendants"). A July 2009 jury trial resulted in a verdict finding that the total fault in causing the accident sued upon was the negligence of Mr. Benoit. Given that verdict, the trial court executed a judgment dismissing Mr. George's claims against the three defendants. Mr. George timely appealed the judgment, asserting four assignments of error:

1.  The trial judge committed manifest error in denying a challenge asserted by plaintiff, Ryan George, and arising under the U.S. Supreme Court case *Batson vs. Kentucky*, 476 U.S. 79 (1986), when defendants exercised a peremptory challenge on jurors, Norman Doucet, Martinez Cole, and Maxine Thibodeaux, African Americans, who represented the second, fourth, and fifth peremptory challenges excluding a person of the African American race, without a race neutral explanation.

2.      The trial court committed manifest error when it granted a challenge asserted by defendants, and arising under *Batson vs. Kentucky*, 476 U.S. 79 (1986), when plaintiff, Ryan George, issued a peremptory challenge to juror, Michael Fontenot, a white male, after plaintiff was able to articulate a racially neutral explanation for exercising his peremptory challenge.

3.      The trial court committed reversible error in failing to order a new trial based upon the inconsistent verdict rendered by the jury following the trial of the merits, and/or providing an improper instruction to the jury in an attempt to cure the inconsistent verdict.

4.      The Honorable Judge James Doherty committed manifest error in not granting plaintiff's motion for new trial given the inconsistencies in the first and second jury verdicts.

## OPINION

In raising his assignments of error, Mr. George seeks only a new trial or a *de novo* review by this court. He does not argue that, absent any procedural defects that would allow him a new trial or a *de novo* review, the jury verdict is manifestly erroneous. With our recognition of the issues before us, we turn to consideration of the assignments of error.

### Assignments of Error Numbers One and Two

During the *voir dire*, Mr. George objected to several of the defendants' peremptory challenges, asserting that the defendants were using this procedural vehicle to exclude blacks from the jury. The trial court ultimately denied all of the plaintiff's objections. Conversely, the defendants objected to several of the plaintiff's peremptory challenges, asserting that the plaintiff was using his peremptory challenges to exclude white males from the jury. The trial court granted one of the defendants' objections. The jury ultimately selected consisted of six white and six black people.

2

The United States Constitution Equal Protection Clause prohibits discrimination on the basis of race in the exercise of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986); *Alex v. Rayne Concrete Service*, 05-1457, 05-2344, 05-2520 (La. 1/26/07), 951 So.2d 138. Further, a private litigant in a civil case may not use peremptory challenges to exclude jurors on account of their race. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077 (1991). Our supreme court has set out a three-step process by which a court examines peremptory challenges for constitutional infirmities: First, the trial court must determine whether the party opposing the peremptory challenge has made a *prima facie* showing that the striking party exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the striking party to present a race-neutral explanation for striking the juror in question. Although the striking party must present a comprehensive reason, the explanation need not be persuasive, or even plausible; the reason suffices as long as it is not inherently discriminatory. Third, the court must then determine whether the opposing party has carried his burden of proving purposeful discrimination. *Alex*, 951 So.2d 138. In making this determination of whether there was discriminatory intent in the use of the peremptory challenge, the trial court must consider all relevant circumstances, which include close scrutiny of the disputed peremptory challenge when compared with the treatment of other panel members who expressed similar views or shared similar backgrounds. *Alexander v. Tate*, 09-844 (La.App. 3 Cir. 2/3/10), _ So.3d. _. "A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous." *State v. Elie*, 05-1569, p. 5 (La. 7/10/06), 936 So.2d 791, 795.

### *Analysis of the Plaintiff's Objections to the Defendant's Peremptory Challenges*

The defendants exercised peremptory challenges to strike Keisha Thomas, Norman Doucet, Martinez Cole, Shontell Edwards, Cora Roy, and Maxine Thibodeaux, all of whom are black. In each case, Mr. George requested that the defendants be required to articulate a racially neutral reason for dismissing these jurors. However, when it was pointed out to Mr. George that Ms. Thomas was the first juror on whom the defendants had exercised a peremptory challenge, he withdrew his request as to that potential juror only. After hearing the defendants' articulated reasons on the remainder of the five potential jurors whom the defendants wished to exclude, the trial court allowed the defendants to exercise their peremptory challenges. Mr. George now argues that the trial court erred in finding that the peremptory challenges of Mr. Doucet, Mr. Cole, and Ms. Thibodeaux were not pretextual.

### *Norman Doucet*

With regard to Mr. Doucet, the defendants' counsel stated:

> My reason for a peremptory challenge of Mr. Doucet, he's had a neck surgery, he's stated that he was in pain for quite a long time after his surgery. I just don't feel like he can serve as a juror based on that. Based on the fact that he's had a prior neck surgery, I think he's going to be sympathetic, whether he believes it or not, to the plaintiffs in this case, on that basis.

Based on this statement, the trial court found no evidence of purposeful discrimination and released the prospective juror.

During the *voir dire* examination Mr. Doucet revealed that he had previously sustained a neck injury which lead to a 1996 three-level fusion that involved the insertion of a steel rod, and that he still suffers pain from the accident. Mr. George

4

argues that the acceptance by the defendants of a white juror, Jessica Jurles, who testified to a similar injury sustained by her husband, constitutes dissimilar treatment of similarly situated prospective jurors that gives rise to a presumption of discriminatory intent.

We find no merit in this argument because a review of the *voir dire* transcript reveals that the defendants had exhausted all of their peremptory challenges when Ms. Jurles was considered. The trial court's determination that there was no discriminatory intent was not clearly erroneous.

### *Martinez Cole*

When the defendants' counsel initially moved to peremptorily challenge Mr. Cole, he noted that "I'm not sure the man can read and he appeared, during the - - when he was sitting in the box that he was pretty much inattentive. Something just didn't look right about him, Judge, I gotta say[.]" After Mr. George raised a *Batson* objection, the trial court required the defendants' counsel to enunciate a more specific reason for striking Mr. Cole, noting that he "did take time when he was presented with the questionnaire, the court noted that, the court asked if he could read it, but then after that Mr. Cole went though it and gave the responses in the order in which they were asked." The defendants' counsel then explained that "[h]e did give responses, Your Honor, but I think he was inattentive, I do not think he will participate in the negotiations with the others, I think he's just going to be a passive juror, and basically, I don't think he's going to - - that he would be fair to the defendant." Based on this statement, the trial court found no evidence of purposeful discrimination and released the prospective juror.

In its initial examination of Mr. Cole during the *voir dire* process, the trial court's first question was "Mr. Cole, can you read?" Mr. Cole did not answer the question. Instead, he responded by stating "My name is Martinez Cole. Address, 1205 Seneca Street, Port Barre, Louisiana. Age, 23. Not married. I don't have any kids. Occupation is metal building, Reed Building system." The trial court questioned Mr. Cole further, with the conversation proceeding as follows:

> Q.  You work for Reed Building - -
> A.  Yeah.
> Q.  And they erect metal buildings?
> A.  Yeah.
> Q.  Okay. You work for Mr. Monica?
> A.  Yeah.
> Q.  Okay.
> A.  I have no wife.
> Q.  Sir?
> A.  I'm single.
> Q.  Single; right. Okay; your education?
> A.  High school. Never served on a jury. I'm Baptist. That's it.
> Q.  Okay, Mr. Cole. And your religion wouldn't stop you from sitting and judging this case; is that correct?
> A.  (Shakes head)
> Q.  That's correct? You have to answer out loud.
> A.  Yes, sir.
> Q.  Okay. Thank you, Mr. Cole.

Mr. George's counsel asked a number of general questions of the prospective jurors during his *voir dire* examination, and only received two direct responses from Mr. Cole. In the first, the following exchange took place when counsel asked whether anyone had strong feelings about people using cellular telephones when driving:

> Q.  What about you, Mr. Cole?
> A.  No, I'm good.
> Q.  You have a cell phone?
> A.  Yes, sir.
> Q.  No strong feelings against people who use their cell phones while driving?
> A.  No, no strong feelings.

The second exchange occurred when Mr. George's counsel questioned the prospective jurors concerning whether anyone would have a problem with awarding a monetary sum for pain and suffering if the evidence established that the plaintiff was entitled to those types of damages:

    Q.    Okay. And Mr. Cole?
    A.    No.

When the defendants' counsel was questioning the jury panel, Mr. Cole's only direct responses were as follows:

    Q.    Mr. Cole, what type of work do you do?
    A.    Metal buildings.
    Q.    What do you mean, "metal buildings"?
    A.    Erection, building.
    Q.    You do labor to help erect them?
    A.    Yeah.

Even from a cold record, one could conclude from these exchanges that Mr. Cole might indeed be a "passive" juror if selected, and his demeanor can credibly be said to have exhibited the basis for the challenge attributed to him by the defense counsel. The trial court found no evidence of purposeful discrimination and released the prospective juror. Based on our review of the entire *voir dire* transcript, we find that the trial court's determination that there was no discriminatory intent was not clearly erroneous.

### Maxine Thibodeaux

In attempting to present a race-neutral reason for exercising a peremptory challenge to remove Ms. Thibodeaux as a prospective juror, the defendants' counsel stated:

> [S]he has a husband who has been disabled for quite a few years, since he was a young man. I also do not believe - - The lady said she was a high school graduate, but she didn't know the difference between male and female when she was asked a question about her daughter, and she

7

has two disabled members in her family.  I just think her sympathy factor would play here, Judge, also.

This explanation is supported by the following dialogue:

> Q. What about your twenty-nine-year-old, male or female?
> A. Male.  She in college.
> Q. A male?
> A. Yeah.  She in college.
> Q. She or he?
> THE COURT:  She is in college.
> A. She in college.
> Q. I thought you said it was a male.
> THE COURT:  Yes, she did.
> Q. It's a girl?
> A. A girl; she in college.

The trial court found no evidence of purposeful discrimination and released the prospective juror.  Based on our review of the entire *voir dire* transcript, we find that the trial court's determination that there was no discriminatory intent was not clearly erroneous.

### *Analysis of the Defendants' Objection to the Plaintiff's Peremptory Challenge*

The defendants first objected to Mr. George's use of peremptory challenges when he exercised his third peremptory challenge to strike Dale Soileau, a white male.  Up until that point in the jury selection process, Mr. George had exercised peremptory challenges only to strike white males from the jury.  Concluding that the defendants made a *prima facie* showing that Mr. George had exercised his peremptory challenges on the basis of race, the trial court required that Mr. George provide race-neutral reasons for his challenges.  The trial court accepted the race-neutral explanations of Mr. George's counsel and allowed the peremptory challenges to stand.  The same scenario occurred when the defendants objected to Mr. George's use of his fourth peremptory challenge to strike Stephen Gauthier, a white male.

8

The issue now before us arose when Mr. George used his sixth peremptory challenge to remove Michael Fontenot, another white male, from the jury venire.[1] The trial court granted the defendants' objection and found the asserted explanation unacceptable. Mr. Fontenot served on the jury.

Mr. George asserts on appeal that the trial court erred in denying his peremptory challenge. On the other hand, the defendants argue that the trial court was correct in granting their objection because the reasons given by Mr. George's counsel were factually inaccurate, pretextual, and not race neutral.

Mr. George's counsel provided the following explanation for peremptorily challenging Mr. Fontenot:

> [I]t is our belief that Mr. Fontenot had very strong feelings about several things, including his CDL drivers, including the fact that he had an owner-operator, such as Mr. - - the defendant's, Horace McBride's, past history as an owner-operator. We believe that these very strong feelings, being what he expressed with a CDL, damages, and the defensive driving tactics, along with his brother being an owner-operator, would cause him to unfairly favor the defendants because he's a CDL operator, has gone through the defensive driving classes. We believe that along with his strong opinions about everything and his ability to probably influence the jury would be something that we wish to avoid.

Mr. Fontenot's answers to questions propounded to him during the *voir dire* examination process established that he is a farrier by profession,[2] who also raises and sells quarter horses, in Opelousas, Louisiana; has a bachelor's degree in equine science; and is married to a nurse. While in the military, he took a four-hour defensive driving course every three years,[3] and has a close friend who teaches

---

[1] Mr. George had used his fifth peremptory challenge to remove a white female from the jury venire.

[2] A farrier is a person specially trained to shoe horses.

[3] He left the military in 1991.

defensive driving courses. He does not have a commercial driver's license (CDL) but his brother-in-law does. However, he and his brother-in-law have never discussed the requirements for a CDL.

Mr. George's primary complaints against Mr. Fontenot related to his experience with CDL drivers such as Mr. McBride, his prior defensive driving training, and his apparently strong demeanor. Primarily, Mr. George seems to be concerned that Mr. Fontenot would overly influence other jurors.

When examining the question of discriminatory intent, the court must closely scrutinize the party's treatment of panel members who shared similar backgrounds. *State v. Elie*, 05-1569 (La. 7/10/06), 936 So.2d 791. Here, we note that the plaintiff did not challenge Mr. Doucet, a black member of the jury venire who had taken a defensive driving class. Nor did the plaintiff challenge five other people with similar backgrounds, all of whom ultimately became members of this jury: Raymond P. Cassimere, who had a CDL and took defensive driving classes once a year; Leon K. Latiolais, who had taken a defensive driving course and had a brother and a close friend who had CDLs; Brian J. Miller, who had taken a defensive driving course and had both a father-in-law and cousins with a CDL; Ashley N. Shaw, whose father had a CDL; and John C. Gilbert, who had taken a defensive driving course.

Based on the inaccuracies given in the plaintiff's proffered explanation, as well as the plaintiff's treatment of other jury venire members who were similarly situated to Mr. Fontenot, we find that there was an inference of discriminatory intent on the part of the plaintiff. *See State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315. We find the trial court's determination that there was discriminatory intent in

Mr. George's attempt to use a peremptory challenge to exclude Mr. Fontenot from serving on the jury was not clearly erroneous.

**Assignment of Error Number Three**

In this assignment of error, Mr. George argues that he is entitled to either a new trial or a *de novo* review of the jury's decision because the trial court improperly commented on the facts of the case in the presence of the jury, in violation of La.Code Civ.P. art. 1791.[4] This issue arises because of the manner in which the jury initially answered the interrogatories propounded to it.

At the close of the trial, the trial court instructed the jury as to the law to be applied in their deliberations and provided the jury with a verdict form mutually agreed to by the parties. When the jury returned its verdict, it answered the verdict form interrogatories pertinent to the issue before us as follows:

1.  Do you find the defendant, Horace McBride, was negligent with regard to the accident of the 19 February 2007 and that his negligence was a legal cause of the plaintiff, Ryan George's, injuries?

    ___ YES    _√_ NO

2.  Do you find that Richard L. Benoit, Jr., the driver of Ryan George's vehicle, was negligent with regard to this accident of 19 February 2007 and that his negligence was a legal cause of the plaintiff, Ryan George's, injuries?

    _√_ YES    ___NO

    If your answer to either of the above questions was "Yes", in what percentages do you find that the negligence, if any of the following persons contributed to plaintiff's injuries? (Please note that your percentages must total 100%.)

---

[4]Mr. George also asserts that the first and second interrogatories were confusing because they were compound questions, addressing both liability and legal causation issues. However, Mr. George's counsel specifically said that he did not object to the jury verdict form after being given an opportunity to review it. Thus, Mr. George has waived any objections to the wording of the jury interrogatories. *Hanks v. Barge Transp. Co., Inc.*, 563 So.2d 1297 (La.App. 3 Cir. 1990), *writ denied*, 569 So.2d 964 (La.1990).

1.    Horace McBride _25 %_

_____2.    Richard L. Benoit, Jr.   _75 %_

In the interrogatories that followed, the jury was asked to assign the amount of monetary damages Mr. George suffered as a result of the accident. The jury left the space set aside to answer these interrogatories blank.

It is clear from a cursory examination of the verdict form that the jury's answers are inconsistent. On the one hand, the jury concluded that Mr. McBride was not negligent in causing the accident and Mr. George's resulting injuries, while on the other it assigned Mr. McBride twenty-five percent of the fault in causing the injuries suffered by Mr. George. Where a jury's answers to verdict interrogatories are patently inconsistent with the general verdict, a trial court is directed either to return the matter to the jury for further consideration or to order a new trial. La.Code Civ.P. art. 1813(E), *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742. In this case, the trial court choose the first course of action.[5]

The trial court instructed the jury on the issue of the inconsistency, provided the jury with a new copy of the same verdict form, and retired the jury to deliberate and reconsider its verdict. Specifically, the trial court instructed the jury as follows:

> Ladies and gentlemen, as the court has indicated before you stepped out, there's an inconsistency in the verdict. The inconsistency the Court will point out to you. *You cannot answer that Horace McBride was not negligent; you cannot answer that question "no" and subscribe a percentage of fault to him.* That's the inconsistency in the verdict so therefore, what the Court is going to do is the Court is going to instruct you to return to deliberate. Your verdict sheet that was previously given has been marked as Court 5 and filed into the record. A new verdict sheet is being handed to you. The court directs you to go back and deliberate. Any further instructions that you need from the

---

[5]The trial court did so only after allowing the attorneys to argue the course of action and after denying Mr. George's oral motion for a new trial.

Court will have to be in writing until you obtain a verdict. [Emphasis added.]

When the jury returned its subsequent verdict, the answers to the first two interrogatories were unchanged, but one hundred percent of the fault was assigned to Mr. Benoit. The trial court's polling of the jury revealed a unanimous verdict.

Mr. George does not question the trial court's authority to return the matter to the jury pursuant to La.Code Civ.P. art. 1813(E). Instead, he argues that in doing so, trial court ran afoul of La.Code Civ.P. art. 1791, which states that "[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."

We disagree with Mr. George's interpretation of the trial court's instruction to the jury. We find that the trial court's instructions to the jury on the inconsistency in the verdict did not improperly comment on or recapitulate the evidence; repeat the testimony of any witness; or give any opinion as to what had been proven, not proven, or refuted; therefore there was no violation of La.Code Civ.P. art. 1791. *Johnson v. State ex rel. DOTD,* 06-898, pp. 6-7 (La.App. 3 Cir. 12/13/06), 946 So.2d 682, 688, *writ denied*, 07-510 (La. 4/27/07), 955 So.2d 693. Thus, we find no merit in this assignment of error.

## Assignment of Error Number Four

In his final assignment of error, Mr. George argues that the trial court erred in denying his motion for new trial asserted after the verdict returned the second verdict. Specifically, he argues that not only was the first jury verdict inconsistent, but that the second was as well because, although the jury found Mr. Benoit one hundred percent at fault in causing his injuries, the jury awarded no monetary damages.

13

We would find merit in Mr. George's argument except for the fact that the only defendant-actor in this accident was Mr. McBride and the jury found him to be without fault. Because the jury assigned no fault to Mr. Benoit, there was no need to assess damages. We find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to the plaintiff, Ryan George.

**AFFIRMED.**