PAUL A. BONIN, Judge.
 

 11 Kelley Burns, along with her husband,
 
 [1]
 
 co-lessees of the Towne-Bridge Place Apartments, filed suit against the owner of the apartments (their lessor), the management company, and their liability insurer.
 
 [2]
 
 Ms. Burns, while walking backwards carrying a box of her belongings, tripped over a spall
 
 [3]
 
 where a concrete pedestrian ramp leading from the apartment complex met the ground. The jury specially found that the defect in the ramp did not constitute an unreasonable risk of harm. The trial judgment, based upon the jury verdict, dismissed with prejudice the Burnses’ lawsuit.
 
 See
 
 La. C.C.P. arts. 1673, 1844, and 1911. Subsequently the trial court denied their motion for judgment notwithstanding the jury verdict.
 
 See
 
 La. C.C.P. arts. 1811 and 1914 C. The Burnses devolutively appeal.
 
 See
 
 La. C.C.P. arts. 2082, 2083 A, and 2087.
 

 |2Because we conclude that the proper standard for our review of the jury’s finding is manifest error, and not
 
 de novo,
 
 and
 
 *1155
 
 because we conclude after a complete review of the record that the jury’s finding that the ramp’s defect did not constitute an unreasonable risk of harm is not clearly wrong and is reasonable, we affirm the judgment of dismissal with prejudice. We explain our conclusions below.
 

 I
 

 In this Part we set out the facts involving the ramp at the apartment complex.
 
 [4]
 
 Adjacent to the apartment complex’s parking lot is a sidewalk. The ramp, made of concrete, is situated between the sidewalk and a breezeway connecting the apartments. A handicap parking and loading area in the parking lot is aligned with the ramp area.
 

 The complex was constructed without the ramp. At the time of construction another sidewalk led from the parking area sidewalk to the breezeway and there was a step at the breezeway entrance. The ramp feature was likely added, some years prior to Ms. Burns’ fall, to the complex to comply with the model code of the American National Standards Institute (ANSI). ANSI standards, since about 1980, have been enforced by the Louisiana Fire Marshal. Congress incorporated many of the ANSI standards in its Americans with Disabilities Acts (ADA).
 
 See
 
 42 J¿J.S.C.A. §§ 12101-12218 (1990). The Louisiana legislature adopted the ADA requirements as a part of its building code in 1990.
 
 See
 
 La. R.S. 40:1733
 
 et seq.
 

 The specific ANSI standard involved in this case is identified as A17.1. Generally, it allows up to a one-quarter inch abrupt vertical change in the level of a walkway. There is no doubt that the vertical change or variance from the sidewalk to this ramp exceeds the maximum variance allowable by standard A17.1. The variance may be as much as 1.75 inches.
 

 The reason for the variance is the improper construction of the ramp. The existing sidewalk area leading to the step at the breezeway was not removed before the concrete ramp was constructed over it. Unless special materials are used, the concrete laid over concrete will result in spall-ing. In fact, the ramp, which appears in photographs to be about seven feet squared, became cracked, with pieces nearly breaking completely away from the ramp, and edges nearest where the slope meets the sidewalk feathering away.
 

 On June 14, 2003, Ms. Burns and her husband, along with family members who were helping them, were moving into an apartment in the complex. Upon her arrival at the complex she used the ramp to go to unlock the door of the apartment and return to unload her car. Her first use of the ramp was uneventful, except that she did notice the cracked pieces of the ramp and, to some extent although she did not pay close attention to it, the variance in the level of the ramp along its entire width. When she observed the condition of the ramp, it was obvious to her that the ramp was not built in that condition.
 

 |4In fact, she made a mental note to be careful about the loose piece of concrete on the ramp and intended to avoid it. The chipped edges were not so much of her concern. In any event, from her car she lifted a box that was awkward to handle,
 
 *1156
 
 but not heavy, and her son took the other side; she began to walk backwards from the parking lot toward the ramp, looking over her shoulder trying to make herself aware not to walk into a tree or building. When she arrived at the ramp, her heel tripped over the chipped edge, but not on the broken pieces of concrete. She fell, injuring herself.
 

 All her family members used the ramp uneventfully. The apartment complex owner repaired the ramp at a cost of less than $3,000.
 

 The jury, in response to interrogatories on the special verdict form, found that she tripped and fell on the handicapped ramp and that her trip and fall was caused by a defect in the handicapped ramp. But the jury also found that the defect on which she tripped did not present an unreasonably dangerous condition.
 

 II
 

 In this Part we address the Burnses’ contentions that the jury’s finding is the result of two distinct legal errors. These legal errors, the Burnses argue, require us to consider
 
 de novo
 
 the evidence and, they hope, to independently conclude that the ramp was unreasonably dangerous. According to the Burnses, the first legal error involves the jury instructions, and the second involves the jury verdict form.
 

 A
 

 The Burnses raise two complaints regarding the jury instructions.
 

 First, over a timely objection, the trial judge instructed the jury with language from the Louisiana Supreme Court’s holding in
 
 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174, p. 2 (La.3/4/98), 708 So.2d 362, 363. Because of the timely objection, we are able to consider the assignment of error on this point.
 
 See
 
 La. C.C.P. art. 1793 C (providing: “A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection.”).
 

 We italicize below the specific portion of the charge to which the Burnses objected, in order to provide some context to its appearance in the instructions given:
 

 ... The fact that an accident occurred because of a vice or defect does not elevate the condition of the thing, to that of an unreasonably dangerous defect. The irregularity must be of such a nature as to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
 

 Bear in mind, it is common for the surfaces of streets, sidewalks and parking lots to be irregular. It is not the duty of the party having custody or control of same to eliminate all variation in elevation existing along the countless cracks, seams, joints and curbs. These surfaces are not required to be smooth and lacking in deviation and indeed such requirement would be impossible to meet. Rather, a party may be held liable only for those defects which present an unreasonable risk of harm. If a condition is patently obvious and easily \e,avoidable, it cannot be considered to present an unreasonable risk of harm.
 

 In determining whether the risk of harm is unreasonable, you should consider, (1) the claim and interest of the parties, (2) the probability of the risk occurring, (3) the gravity of the consequences, (4) the burden of adequate precaution!;,] (5) individuals and societal
 
 *1157
 
 right and obligation, and (6) the social utility involved....
 

 The Burnses objected to the italicized language in the instruction because its source was the
 
 Reed
 
 decision, which they argued was distinguishable on its facts.
 
 [5]
 
 The trial judge, in overruling the objection, agreed that the source of the specific language was
 
 Reed,
 
 and that the facts of
 
 Reed
 
 were not dispositive of the instant dispute, but she determined that
 
 Reed’s
 
 language was an accurate synthesis of the law regarding irregular surfaces, which was at issue in this matter.
 

 We agree with the trial judge that the precepts of law summarized in
 
 Reed
 
 are to be found in additional Louisiana jurisprudence. Indeed in
 
 Reed
 
 the Supreme Court expressly cited to its earlier holding regarding a variance in a sidewalk in
 
 Boyle v. Board of Supervisors, Louisiana State Univ.,
 
 96-1158 (La.1/14/97), 685 So.2d 1080.
 
 Boyle
 
 itself relied on earlier decisions, including
 
 White v. City of Alexandria,
 
 216 La. 308, 314-16, 43 So.2d 618, 620 (1949), which involved a variance in a sidewalk of 1.5-2.0 inches, which did not present an unreasonable risk of harm.
 
 Boyle, supra,
 
 p. 3, 685 So.2d at 1082. The variance in this case is claimed by the expert architect to be as much as 1.5-1.75 inches.
 

 Second, the Burnses complain that the trial judge did not give the jury the following instruction which they had requested in writing:
 

 |7The violation of a statute, code or ordinance constitutes negligence per se if its violation was a cause in fact of plaintiffs’ accident, that is, the injury would not have been sustained “but for” the conduct of the defendant in violating the statute, code or ordinance.
 

 We have been unable, however, to locate anywhere in the trial court record where the Burnses timely objected to the court’s
 
 failure
 
 to give the specially requested instruction.
 
 See
 
 La. C.C.P. art. 1793 C,
 
 supra.
 
 Nonetheless, because the Burnses’ contentions concerning “negligence
 
 per se
 
 ” pervade their arguments on appeal, we consider it expeditious to address those contentions.
 
 [6]
 

 The Burnses argue that the property owner, the lessor, violated statutory building standards or ANSI standards. The maximum permissible deviation in variance is a one-quarter inch abrupt vertical change in level. Greater deviation requires beveling. We understand the Burnses’ argument to extend to claiming that a violation of the statute relieves them of the necessity of proving that the deviation which exceeded the standards presented an unreasonable risk of harm.
 
 [7]
 

 Although the trial judge did not give the Burnses’ requested instruction, she did give the following instruction to the jury:
 

 
 *1158
 
 Violation of a statute or ordinance constitutes negligence. To be actionable, however, the negligence must also be a legal cause of the accident. Actionable conduct is both a cause-in-fact of the injury and the legal cause of the harm incurred. To satisfy the cause-in-fact requirement, the finder of fact must determine that the injury would not have been sustained but for the conduct of the parties’ alleged negligence. To be a legal cause of Rthe harm, there must be a “substantial” relationship between the conduct and harm incurred.
 

 In a classic decision, the Louisiana Supreme Court, dealing with these same kinds of building standards, held:
 

 While statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined.
 

 Smolinski v. Taulli,
 
 276 So.2d 286, 289 (La.1973). One of the general principles applied by the Supreme Court in
 
 Smolin-ski,
 
 which is highly pertinent to the Burns-es’ arguments about so-called “negligence
 
 per se,”
 
 is that “[ajctionable negligence results from the creation or maintenance of an unreasonable risk of harm.”
 
 Smolinski, supra
 
 at 288. Thus, it is clear that even when the violation of a statute is proved, such is not a substitute for proving the existence of “an unreasonable risk of harm.”
 

 Moreover, we consider the Burns-es’ continued reliance upon a theory of “negligence
 
 per se
 
 ” to be completely misplaced. “The doctrine of negligence per se has been rejected in Louisiana.... However, statutory violations provide guidelines for civil liability.”
 
 Galloway v. State, Dept. of Transp. and Development,
 
 94-2747, p. 5 (La.5/22/95), 654 So.2d 1345, 1347;
 
 see also BellSouth Telecommunications, Inc. v. Eustis Engineering Co., Inc.,
 
 07-0865, p. 5 (La.App. 4 Cir. 12/19/07), 974 So.2d 749, 752. (We further treat the issue of the necessity of proving an unreasonable risk of harm under each of the Burnses’ theories of recovery in Part III— A,
 
 post.)
 

 “A trial judge has a duty to give instructions which properly reflect the law applicable in light of the facts of the particular case.... In order to fulfill that duty, he must both require that the jury consider only the correct law and avoid | flconfusing the jury.”
 
 Guidry v. Bank of LaPlace,
 
 94-1758, p. 3 (La.App. 4 Cir. 9/15/95), 661 So.2d 1052, 1055 (ellipsis indicates citation omitted);
 
 see also Jones v. Peyton Place, Inc.,
 
 95-0574, p. 8 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 761-762. But as the third circuit has noted,
 

 The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; he must, however, correctly charge the jury.... An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial, (citations omitted).
 

 Doyle v. Picadilly Cafeterias,
 
 576 So.2d 1143, 1152 (La.App. 3d Cir.1991).
 
 See also
 
 Maraist, 1 La. Civ. Law Treatise, Civil Procedure, § 11.10 (2d ed.).
 

 On the one hand, the jury instruction to which the Burnses timely objected was correct, and on the other hand, the jury instruction which they requested was incorrect. The Louisiana Supreme Court in
 
 Nicholas v. Allstate Ins. Co.,
 
 99-2522, pp. 8-9 (La.8/31/00), 765 So.2d 1017, 1023, requires that in addition to finding an erroneous jury instruction, we must also find that the instruction “likely contributed to the verdict before we engage in a
 
 de novo
 
 review of the jury’s verdict.” Since we have not found an erroneous instruction,
 
 *1159
 
 we are surely not authorized to review the facts of this case
 
 de novo. See also Adams v. Rhodia, Inc.,
 
 07-2110, p. 7 (La.5/21/08), 983 So.2d 798, 805 (“Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts.”);
 
 Dede v. Tip’s Development, L.L.C.,
 
 09-0199, p. 3 (La.App. 4 Cir. 7/1/09), 16 So.3d 526, 529.
 

 ImWe do note that we have carefully reviewed the entire and complete instructions given by the trial judge to the jury. They are clear, correct, and satisfactory.
 

 We turn now to consider whether the content of the jury verdict form compels
 
 de novo
 
 review.
 

 B
 

 The Burnses complain on appeal that the special verdict form submitted to the jury had a “plain and fundamental” error which requires us to disregard the jury’s findings of fact (including that the defect on which Ms. Burns tripped or fell did not present an unreasonably dangerous condition).
 
 See Berg v. Zummo,
 
 00-1699, p. 13, n. 5 (La.4/25/01), 786 So.2d 708, 716, (“We find that the jury instructions and interrogatories regarding the assessment of punitive damages against The Boot misstated the law and thus contained a ‘plain and fundamental’ error which leads us to relax the contemporaneous objection requirement.”).
 

 At the outset the Burnses concede that they failed to object contemporaneously to the special verdict form in the trial court before its submission to the jury, before the jury began deliberations, or even before the jury concluded its deliberations. The Burnses first objected to the special verdict form in their motion for judgment notwithstanding the verdict.
 

 La. C.C.P. art. 1812 provides in pertinent part:
 

 A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several |n special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue.
 
 If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury.
 
 As
 
 to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.
 

 B. The court shall inform the parties within a reasonable time prior to their argument to the jury of the special verdict form and instructions it intends to submit to the jury and
 
 the parties shall be given a reasonable opportunity to make objections.
 

 C. ...
 

 D. The court shall then enter judgment in conformity with the jury’s answers to these special questions and according to applicable law.
 

 (emphasis supplied)
 

 See also
 
 Maraist, 1 Louisiana Civil Law Treatise, Civil Procedure, § 11:12 (2d ed.).
 

 
 *1160
 
 Generally, the failure to object timely to the special verdict form would preclude appellate review.
 
 See, e.g., Wilson v. Transp. Consultants, Inc.,
 
 04-0334, 04-0335, p. 9 (La.App. 4 Cir. 3/2/05), 899 So.2d 590, 598 (“In order to appeal an allegedly defective jury interrogatory, parties must object to or demand a jury interrogatory be submitted to the jury prior to the jury retiring. La. C.C.P. art. 1812 C.”);
 
 Vaughn Contractors, Inc. v. Cahn,
 
 629 So.2d 1225, 1228 (La.App. 4th Cir.1993) (“By failing to make an objection to the interrogatories before the interrogatories were presented to the jury, the defendants waived their right to have the issue considered on appeal.”);
 
 Clark v. Jesuit High School of New Orleans,
 
 96-1307, pp. 4-5 (La.App. 4 Cir. 12/27/96), 686 So.2d 998, 1001;
 
 St. Pierre v. Gen. American Transp. Corp.,
 
 360 So.2d 595, 598 (La.App. 4th Cir.1978).
 
 [8]
 

 Our court has on occasion made exceptions to the general rule of timely objection when the jury interrogatories are tainted with legal errors which prejudiced one of the parties.
 
 Marchetta ex rel Marchetta v. CPC of Louisiana, Inc.,
 
 99-0485, p. 5 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 154, citing to our earlier decision in
 
 Guidry, supra,
 
 p. 9 n. 10, 661 So.2d at 1058 (stating that a clear legal error “cannot be waived by the defendants failure to raise the proper objection.”)
 

 The “plain and fundamental” or clear legal error, according to the Burnses in their brief, is that “the jury never got to make a determination as to whether the defect caused Kelley Burns to trip/fall violated the applicable building codes.” We disagree.
 

 The jury responded affirmatively to the special interrogatory propounded to it as follows: “Do you find, from a preponderance of the evidence, that the trip/fall of Kelly [sic] Burns was caused by a defect in the handicap ramp located at Towne-Bridge Apartments?” Here again, the Burnses’ argument that the determination of whether the defect is a violation of a statute is of any consequence is because they misperceive that such a finding substitutes for a finding that the defect itself presented an unreasonable risk of harm. In this case, the uncontroverted evidence is that the ramp variance exceeded the maximum deviation allowed by ANSI standards. Had the jury been given the special 11sinterrogatory (which the Burnses now propose) on the ANSI violation, a factual finding by the jury that the variance did violate the statutory standard would result in a finding that there was a “defect,” the same finding made in its answer to the special interrogatory which it was given.
 

 Article 1812 A answers the problem raised: “As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.” Indeed, a harmonious finding of fact would find a defect as a result of the statutory violation
 
 [9]
 
 or, if the jury had not made such a finding in response to a special interrogatory, such a finding would be inconsequential because
 
 the jury d,id find a defect.
 

 
 *1161
 
 Irrespective of the answer which the jury (or the judge) would have or ought to have given to the now-proposed jury interrogatory, the next question to be answered by the jury — regardless of whether the defect was created by ordinary negligence, by negligence arising from a violation of a statute, or arising from a lessor’s strict liability
 
 (see
 
 our discussion at Part III-A,
 
 post)
 
 — remains the one contained in the following interrogatory (which the jury answered in the negative): “Do you find from a preponderance of the evidence that the defect on which Kelly[sic] Burns tripped/fell presented an unreasonably dangerous condition?”
 

 We conclude that the Burnses can show no prejudice to their cause and that they have not shown “the kind of plain, fundamental error which might tempt us not to heed the language of article 1793.”
 
 Trans-Global Alloy Ltd. v. First National Bank of Jefferson Parish,
 
 583 So.2d 443, 448 (La.1991). The failure of the trial 114court to propound on its own the interrogatory which the Burnses seek is
 
 at best,
 
 in the absence of prejudice, nothing more than “harmless error.”
 
 See In re Asbestos v. Bordelon,
 
 96-0525, p. 11 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 940.
 

 “The manifest error standard of appellate review may not be ignored unless the proposed jury interrogatories are so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts.”
 
 Doyle,
 
 576 So.2d at 1153. The interrogatories on the special verdict form in this case, we are convinced, did not preclude the jury from reaching a fair verdict. Accordingly, since we have not found in the interrogatories set forth in the special verdict form either “plain and fundamental” error or prejudice to the Burnses, we are not authorized to review the facts of this case
 
 de novo.
 

 C
 

 In conclusion, then, we do not find that the jury’s findings are interdicted in any way. There is no legal basis for us as an intermediate appellate court to reject the jury’s findings of fact in this case and conduct a
 
 de novo
 
 review of the evidence. Our appellate review is limited to determining whether the jury’s factual finding that the ramp’s defect was not unreasonably dangerous is manifestly erroneous or clearly wrong, to which task we turn in the next Part.
 

 Ill
 

 The Louisiana Supreme Court pronounced “that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard.”
 
 Reed, supra,
 
 99-1174, p. 4, 708 So.2d at 365. The Court recalled its decisions in
 
 Entrevia v. Hood,
 
 427 So.2d 1146, 1149 (La.1983) and
 
 Tillman v. Johnson,
 
 612 So.2d 70 (La.1993) (per curiam).
 
 Reed, supra,
 
 99-1174, p. 4, 708 So.2d at 364. Relying on them, the Court further explained:
 

 Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis. Additionally, an appellate court, reviewing a cold record, is not in the best position to weigh and evaluate the evidence presented and make this determination. Rather the original fact finder, viewing live testimony and evidence, is best positioned to make a determination so heavily laden with factual issues.
 

 Because a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by the application of those facts to a less-than-scientific standard, a reviewing
 
 *1162
 
 court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference ...
 

 Reed, supra,
 
 99-1174, p. 4, 708 So.2d at 864-365. There is no doubt that the proper standard for us to review the jury’s finding that the defect in the ramp did not present an unreasonable risk of harm is the manifest error standard.
 

 A
 

 The Burnses asserted three theories of recovery. The primary one is the one they characterize as “negligence
 
 per se,”
 
 but we treat as a statutory violation issue. Another major theory of recovery, which we have not yet discussed in this opinion, is the strict liability of their lessor under former La. Civil Code art. 2695. The Burnses also assert a theory under the general strict liability principles of La. Civil Code arts. 2317 and 2317.1, which they acknowledge to be the equivalent of a general negligence theory.
 
 See Moffitt v. Sewerage and Water Bd. of New Orleans,
 
 09-1596, p. 3 (La.App. 4 Cir. 5/19/10), 40 So.3d 3367 (also referencing Frank L. Ma-raist and Thomas C. Galligan, LOUISIANA TORT LAW § 14.2, at 330-32 (1996)).
 

 Regardless of which of these theories of recovery is pursued, the one inescapable burden on an injured plaintiff is to establish that a person or thing presented an unreasonable risk of harm.
 
 See Oster v. Dep’t of Transp. and Dev., State of Louisiana,
 
 582 So.2d 1285, 1288 (La.1991) (“Plaintiff brought this suit essentially under negligence and strict liability theories. ...
 
 Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.”)
 
 (emphasis supplied)
 

 With special regard to the violation of ANSI standards, which is a statutory violation, we have already called attention to the holding in
 
 Smolinski
 
 that even in such a case “[ajctionable negligence results from the creation or maintenance of an unreasonable risk of harm.”
 
 Smolinski, supra,
 
 276 So.2d at 288. As we said, proving a statutory violation is no substitute for
 
 proving
 
 the existence of “an unreasonable risk of harm.”
 

 To conclude on the requirement that a plaintiff must establish that the thing, here the ramp, presents an unreasonably dangerous consideration, we consider former La. Civil Code art. 2695, which provided:
 

 The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the |17lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
 

 We have held under this article that a
 

 defect is a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances ..., a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use.
 

 Freeman v. Julia Place Ltd. Partners,
 
 95-0243, p. 7 (La.App. 4 Cir. 10/26/95), 663 So.2d 515, 519 (ellipsis indicates citation omitted).
 

 We now consider the precepts guiding us in determining whether the jury was manifestly erroneous in finding that the Burnses did not establish that the ramp’s
 
 *1163
 
 defect, which caused Mrs. Burns’ injuries, presented an unreasonable risk of harm.
 

 B
 

 For a thing to be defective, it must create an unreasonable risk of harm under the circumstances. In determining whether a risk is reasonable or unreasonable, the factfinder’s task is to balance the probability and magnitude of the risk against the utility of the thing,
 
 Hunt v. City Stores, Inc.,
 
 387 So.2d 585, 588 (La.1980).
 

 “The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically.... [It] is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed by this court to symbolize the judicial process required by the civil code. Since Articles 2317 and 2322 are not detailed rules for all concrete cases, it becomes the interpreter’s duty to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility.... Reaching an intelligent and responsible decision of whether a risk is | ^unreasonable involves consideration of moral, social, and economic values as well as the ideal of justice.”
 

 Oster v. DOTD, supra,
 
 582 So.2d at 1289 (citing
 
 Landry v. State,
 
 495 So.2d 1284, 1287 (La.1986)). The
 
 Oster
 
 Court continued:
 

 The court must carefully consider all the circumstances surrounding the particular accident under review to determine whether allowing recovery to the particular plaintiff involved, for damages occurring in the particular manner in which the plaintiff was injured, is desirable from the standpoint of justice and the social utility of the conduct of the respective parties.
 

 Id.
 

 Other factors which a jury must consider are the cost or feasibility of prevention or repair, and the accident history of the defect.
 
 See Reed, supra,
 
 97-1174, pp. 6-7, 708 So.2d at 365-366.
 

 Another important factor for the factfinder to consider is whether the defect presented an open and obvious hazard. The Louisiana Supreme Court holds in
 
 Eisenhardt v. Snook:
 

 We have recognized that defendants generally have no duty to protect against an open and obvious hazard.
 
 If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff.
 
 The degree to which the a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner.
 

 Eisenhardt v. Snook,
 
 08-1287, p. 6 (La.3/17/09), 8 So.3d 541, 544-545 (emphasis supplied);
 
 Blank v. Capdeville,
 
 94-373, p. 4 (La.App. 5 Cir. 11/16/94), 646 So.2d 1146, 1149 (plaintiff “admitted she was aware of the pothole and had avoided it in the past”).
 

 Thus, the factfinder
 
 may
 
 conclude that an open and obvious defect does not present an unreasonable risk of harm.
 
 [10]
 
 And, of course, “not every minor imperfection or defect in a thing will give rise to delictual
 
 *1164
 
 responsibility.”
 
 Eisenhardt, supra,
 
 08-1287, p. 7 (La.3/17/09), 8 So.3d at 545.
 

 The Burnses place great store in the testimony of the architect who opined that the defect in the ramp presented an unreasonable risk of harm and that his opinion was uncontroverted by any other witness, expert or otherwise. “Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact.” La. C.E. art. 704. But the factfinder is not necessarily bound by such opinion evidence; the factfinder may disregard expert testimony altogether.
 
 See Madere v. Madere,
 
 93-610, p. 3 (La.App. 5 Cir. 2/9/94), 632 So.2d 1180, 1182.
 
 See also Lanosa v. Harrison,
 
 02-0026, p. 4 (La.App. 4 Cir. 8/7/02), 828 So.2d 602, 604.
 

 Although an expert’s opinion may be very helpful to a factfinder, on this particular issue we think that the myriad considerations to be weighed by the factfinder in determining the unreasonableness of the harm firmly establishes this as a matter for the province of the jury. Stated another way, this determination is just as much within the competency of the factfinder as it is within that of a forensic architect or other expert.
 
 [11]
 
 The ultimate fact in this case is arrived at after 120all by the application of “a less-than-scientific standard.”
 
 Reed, supra,
 
 99-1174, p. 4, 708 So.2d at 364.
 

 It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly ■wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable, (citations omitted).
 

 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). And the Louisiana Supreme Court explained further, in
 
 Stobart v. State Dept. of Transp. and Development,
 
 617 So.2d 880, 882-83 (La.1993)
 
 [12]
 
 “where two permissible views of the evidence exist, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong.”
 

 A ramp situated near a handicapped parking zone has tremendous social utility. A ramp in the condition of this one at the time of Ms. Burns’ fall obviously has less social usefulness. The cost of remediating the defective condition was not great. The likelihood of injury was, however, not inconsiderable although there is no indication of accident history other than Ms. Burns’ fall.
 

 But then the defect in the ramp was obvious; Ms. Burns had actually observed the very defect over which she just minutes later stumbled. Moreover, the manner in which she was walking toward the ramp cannot be described as normal; she was walking backwards, carrying a box, and looking over her shoulders for trees or buildings to avoid.
 

 We simply cannot say in this fact-intensive inquiry that the factfinder was manifestly erroneous. We do not decide whether this jury was right or wrong; its 121 determination of the ultimate fact — that the defect in the ramp did not present an
 
 *1165
 
 unreasonable risk of harm — is reasonable. Therefore, it is due our deference.
 

 IV
 

 In this Part we briefly address the Burnses’ argument that the trial judge committed legal error in not granting their motion for JNOV.
 
 See
 
 La. C.C.P. art. 1811. We observe that a judgment refusing to grant a motion for JNOV is an interlocutory judgment.
 
 See
 
 La. C.C.P. art. 1914 C. “An interlocutory judgment is appeal-able only when expressly provided by law.” La. C.C.P. art. 2083 C. The appeal is from the final judgment of dismissal, although the appellant may assign the denial of the motion as an assignment of error.
 
 See
 
 La. C.C.P. art. 1811 E.
 

 The Louisiana Supreme Court in
 
 Anderson v. New Orleans Public Service, Inc.,
 
 583 So.2d 829, 832 (La.1991), defined the JNOV as follows:
 

 A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict.
 
 The motion should be granted only tvhen the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. ...
 
 [I]n making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party, (emphasis added.)
 

 See also Finnie v. Vallee,
 
 620 So.2d 897, 899 (La.App. 4th Cir.1993).
 

 Because we have already concluded that the jury’s findings of fact were not clearly wrong and were reasonable, we disagree with the Burnses that the trial court should have rendered a judgment notwithstanding the verdict.
 

 | ^DECREE
 

 Accordingly, we affirm the trial court’s judgment in favor of CLK Investments V, L.L.C., 1st Lake Properties, Inc., and State Farm Fire and Casualty Company, and against Kelley Burns and Terry Burns, dismissing with prejudice their lawsuit.
 

 AFFIRMED.
 

 [1]
 

 .Her husband, Terry, joined her as a plaintiff, asserting his derivative claim for loss of consortium.
 
 See
 
 La. Civil Code art. 2315;
 
 Engles v. City of New Orleans,
 
 03-0692, p. 32 (La.App. 4 Cir. 2/25/04), 872 So.2d 1166, 1186;
 
 Shepard v. State Farm Mutual Automobile Ins. Co.,
 
 545 So.2d 624, 629 (La.App. 4th Cir. 1989).
 

 [2]
 

 . The property owner is CLK Investments V, L.L.C., and the property manager is 1st Lake Properties, Inc. The insurer is State Farm Fire and Casualty Company.
 

 [3]
 

 . ''Spall” is defined as "chip, flake, a small fragment broken from the face or edge of a material (as stone, metal, concrete, ...) and having at least one featheredge”.
 
 Webster’s Third New International Dictionary
 
 (1976 ed.).
 

 [4]
 

 . For our purposes, we have restricted our discussion of the facts to those facts testified to by Ms. Burns herself and by Ladd Ehlinger, a forensic architect, qualified by the court as an expert in the "field of architecture including how people move through spaces and causation of accidents only as it relates to architectural code such as the Life Safety Code and Building Codes”.
 
 See
 
 La. C.E. art. 702;
 
 see also Safeguard Storage Properties, L.L.C. v. Donahue Favret Contractors, Inc.,
 
 09-0344, p. 4 (La.App. 4 Cir. 5/27/09), 13 So.3d 244, 249 (Bonin, J., concurring) ("An expert witness is an adjunct to the trier of fact.”).
 

 [5]
 

 . The Burnses have enlarged their objection in this court, arguing in their brief: "It is respectfully submitted that this jury charge should have included an admonishment that if the irregularity or deviation in the sidewalk or street, (defect) [sic] was a code violation, and this defect caused Mrs. Burns to fall, then the defendant was negligent per se, that is negligent as a matter of law,
 
 and the defect would be unreasonably dangerous as a matter of law."
 
 (emphasis supplied)
 

 [6]
 

 . By discussing the Burnses’ argument on this point, we have no intention of diminishing the "body of jurisprudence which requires that a party
 
 must
 
 assert an objection
 
 in the trial court
 
 in order for the appellate court to reach the issue, whether by assignment of error or otherwise.”
 
 Nicholas v. Allstate Ins. Co.,
 
 99-2522, p. 8, n. 7 (La.8/31/00), 765 So.2d 1017, 1023, n. 7 (emphasis supplied).
 

 [7]
 

 .The Burnses argue in their brief: "When a defect is created by violation of a statute, as a matter of law the defect is unreasonably dangerous.”
 

 [8]
 

 .
 
 See also
 
 the first circuit's treatment of the issue in
 
 Moore v. Safeway, Inc.,
 
 95-1552 (La.App. 1 Cir. 11/22/96), 700 So.2d 831, 840-41. See
 
 also George v. McBride,
 
 10-0042, pp. 6-7, (La.App. 3 Cir. 6/2/10), 40 So.3d 442, 447-48 (wherein the trial judge returned the matter to the jury for further consideration when the jury’s answers were inconsistent with the general verdict).
 

 [9]
 

 . We pretermit whether Ms. Burns fell within the class of persons (handicapped persons) for whom the owner argues that the statute was designed to protect.
 

 [10]
 

 .
 
 But see
 
 Frank L. Maraist, et al,
 
 Answering a Fool According to His Folly: Ruminations on Comparative Fault Thirty Years On,
 
 70 La. L.R. 1127, 1133 and 1144(2010).
 

 [11]
 

 . For example, physician expertise is usually necessary in medical malpractice cases, but some acts of malpractice are as comprehensible to a lay person as to a learned physician and in such cases no expert witness is required.
 
 See Pfiffner
 
 v.
 
 Correa,
 
 94-0992, 94-0924, 94-0963, p. 9 (La.10/17/94), 643 So.2d 1228, 1233.
 

 [12]
 

 .
 
 See also Rabalais v. Nash,
 
 06-0999, p. 4 (La.3/9/07), 952 So.2d 653, 657;
 
 Mart v. Hill,
 
 505 So.2d 1120 (La.1987).